FILED
FEB 1 2 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

LAURA ESCALANTE and ETHEL JO )
MITCHELL, both individually and for the )
benefit of all wrongful death beneficiaries/heirs )
of Omar Miles White, deceased, )
                                                         )
          *Plaintiffs*,                  )
                                                         )
BRANDY LIDGE, individually and as next )
friend of Zachary White, a minor, and )        Civil No. 5:18-CV-116-OLG
TAMISHA HAMILTON, individually and as )
next friend of Tayshawn Hamilton, a minor, )
          *Intervenors*,        )
v. )
CREEKSIDE LOGISTICS, LLC d/b/a )
TIMER TRANSPORT, LLC and )
METRO TRAILER LEASING, INC. )
          *Defendants*.       )

## ORDER

This case is before the Court on Intervenors' Motion to Extend Discovery Deadline (docket no. 47); Defendant Metro Trailer Leasing Inc.'s Motion for Summary Judgment (docket no. 48); Intervenors' No-Evidence Motion for Summary Judgment (docket no. 49); Defendants' Motion for Partial Summary Judgment on Direct Negligence and Exemplary Damage Claims (docket no. 50); Intervenors' Motion to Exclude or Limit the Testimony of Corporal Jon Shock (docket no. 45); Defendants' Motion to Exclude or Limit the Expert Testimony of David L. Dorrity (docket no. 61); and Intervenors' Motion to Exclude or Limit the Testimony of Lane Van Ingen (docket nos. 46, 64).

The Court finds that the motion for additional discovery should be GRANTED as set forth below; that Intervenors' motion for summary judgment and motions to exclude or limit

expert testimony should be DENIED; that Defendant Metro Trailer Leasing's motion for summary judgment should be GRANTED; and that Defendants' motions for summary judgment and to limit or exclude expert testimony should be GRANTED IN PART and DENIED IN PART as set forth below.

## Background

This case arises from a vehicle collision in which Omar Miles White suffered injuries that caused his death. Docket no. 1 at ¶¶ 4.1-4.6. Plaintiffs and Intervenors, who assert claims for negligence and gross negligence, are White's mother, his children, and two women who have asserted competing claims under Tex. Civ. Prac. & Rem. Code § 71.002. Docket nos. 1; 22. Defendants are Creekside Logistics, LLC, a interstate motor carrier who engaged Willie Curtis Bryant, the driver who was operating the tractor trailer involved in the collision with White, and Metro Trailer Leasing, Inc., which leased the trailer that was being towed at the time of the collision to Creekside. The Court has denied the cross-motions for summary judgment filed by Plaintiffs and Intervenors, finding that genuine factual disputes exist regarding whether Escalante or Lidge were White's common law spouse at the time of his death. Docket no. 41 at 6. The Court now considers the various summary judgment and other pending motions.

## Intervenors' Motion to Extend Discovery Deadline (docket no. 47)

Eleven days before the discovery deadline established by the Court's scheduling order, Intervenors deposed Lynette Green, a dispatcher employed by Creekside. Counsel for Intervenors questioned Green regarding the two individuals indicated by the police report to have been present in the tractor trailer at the time of the collision in this case: Willie Curtis Bryant, who testified in his deposition that he was operating the tractor trailer at the time of the collision, and Anthony Oliver, who Bryant testified was a passenger asleep in the truck at the time of the collision. Docket nos. 47 at 1-3; 53 at ¶¶ 1-3. Green testified that, while she did believe that

Oliver operated the tractor trailer at some point during the load that was being transported at the time of the collision, she was "not absolutely sure" whether Oliver was operating the tractor trailer at the time the collision occurred, although it was "possible." Docket no. 47 at 3. Green also testified that she spoke with Bryant after the collision, and that there was "a worry that . . . Anthony was driving" and in response to the question of whether "you believe that [Creekside General Manager] Mitch[ell Bishop] and [Owner] Scott [Luster] knew that Mr. Oliver was driving at the time of the collision;" Green answered "I would think they knew." Docket no. 47 at 3. Intervenors argue that this testimony presents "vital information regarding a potential new tortfeasor and the possible perjury committed by Bryant," and therefore seek an extension of the discovery deadline that would permit them to "do more discovery and depose Oliver." Docket no. 47 at 2.

In response, Defendants argue that good cause to extend the discovery deadline does not exist, because Green acknowledges in her deposition testimony that she does not know who was operating the tractor trailer at the time of the collision, and because Intervenors have long known that Oliver was in the vehicle at the time of the collision but declined to seek to depose him during the discovery period established by the Court. Docket no. 53 at 2-3. Defendants argue that Intervenors' true objective is to reopen discovery so that they may depose two other fact witnesses associated with Defendants who are not identified in either parties' filings, but whom Defendants allege Intervenors requested depositions from shortly before the close of discovery. Docket no. 53 at 2.

Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that "[a] schedule may be modified only for good cause and with the judge's consent." The good cause standard "requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension" and courts consider four factors to guide the "good cause"

determination: "(1) the party's explanation; (2) the importance of the requested relief; (3) potential prejudice in granting the relief; and (4) the availability of a continuance to cure such prejudice." *Sw. Refrigerated Warehousing Services Joint Venture v. M.A. & Sons, Inc.*, EP-16-CV-00421-DCG, 2017 WL 8777365, at *1 (W.D. Tex. Dec. 20, 2017) (citing *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 Fed. App'x 866, 869 (5th Cir. 2010). "No single factor is dispositive, nor must all the factors be present." *Sapp*, 406 Fed. App'x at 869. The Court finds that the first and second factors weigh in favor of granting the additional discovery. The record indicates that, although Plaintiffs and Intervenors were aware of Oliver's presence in the tractor trailer from the outset of discovery, they did not discover any evidence suggesting that he may have been driving the tractor trailer until Green's deposition, which occurred shortly before the close of the discovery period. And while Green's testimony did not indicate actual knowledge that Oliver was driving the tractor trailer at the time of the collision, it did indicate an understanding that other individuals may have discussed the possibility that he was—testimony not sufficient to constitute admissible probative evidence, but sufficient to warrant further discovery. The Court further finds that the third and fourth factors do not weigh against granting the additional discovery: Defendants have not identified any prejudice that would flow from doing so, and, if necessary, the Court can continue the trial date in this matter—currently set for April 8, 2018—to accommodate any further motions practice that may become necessary in light of evidence revealed in the course of this additional discovery. The Court accordingly finds that Intervenors' Motion to Extend Discovery Deadline (docket no. 47) should be GRANTED as set forth below.

The Court next proceeds to consider the summary judgment and other motions that are currently pending. The rulings set forth below are based on the current record, which contains no evidence capable of being offered in admissible form indicating that Oliver, rather than Bryant,

may have been operating the tractor trailer at the time of the collision. In the event that the additional limited discovery granted herein reveals evidence that could create a fact issue as to the identity of the driver of the tractor trailer, the parties may seek leave to file additional motions as necessary. This Order leaves in place the April 8, 2018, trial setting in this case. In the event that additional motions practice becomes necessary, or if a party requires additional time to prepare for the trial, the Court will consider a motion to continue the trial setting in this case.

## The Motions for Summary Judgment

The Court next considers the various motions for summary judgment. Summary judgment is warranted if the moving party can establish that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 327 (1986)). When considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmovant's favor. *Smith*, 158 F.3d at 911.

## Defendant Metro Trailer Leasing Inc.'s
## Motion for Summary Judgment (docket no. 48)

In its summary judgment motion, Defendant Metro Trailer Leasing Inc. asserts that Defendant Creekside Logistics, LLC had leased the trailer involved in the collision from it, and that Willie Bryant, who was operating the tractor-trailer at the time of the collision, was engaged with Creekside as an independent contractor. Docket no. 48 at 6. Metro therefore argues that, because no evidence shows that it employed Bryant, exercised control over his operation of the tractor-trailer, or maintained custody or control over the trailer at the time of the collision, it cannot bear vicarious or direct liability for any negligent act or omission of either Creekside or

Bryant. Docket no. 48 at 7-9. Metro further argues that Intervenors have failed to present any evidence that Metro engaged in any act or omission that involved an extreme degree of risk or had any subjective awareness of any risk posed by such conduct, and that Metro is therefore entitled to summary judgment on Intervenors' gross negligence claim. Docket no. 48 at 6.

In their responses, Plaintiffs and Intervenors argue that summary judgment is not appropriate both because Bryant was Metro's statutory employee under the Federal Motor Carrier Safety Regulations (FMSCR) and because of Green's testimony that the trailer might have been entrusted to Oliver, who did not have a commercial driver's license at the time of the collision. Docket nos. 56 at 3-5; 57 at 4-5.

The Interstate Common Carrier Act and the Federal Motor Carrier Safety Regulations (FMCSR) establish that "interstate motor carriers have both a legal right and duty to control leased vehicles operated for their benefit" and accordingly create statutory employment relationships that preempt state agency law and under which "an interstate carrier is vicariously liable as a matter of law . . . for the negligence of its statutory employee drivers." *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 39 (Tex. App.—Fort Worth 2002, no pet.). However, the statutory employment relationship created under the FMCSR exists "between the employee of the lessor-owner and the lessee." *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 849 (Tex. App.—Fort Worth 2006, no pet.). Similarly, liability for negligent entrustment in this context generally requires that the defendant entrustor be "reasonably able to anticipate that an injury would result as a natural and probable consequence of the entrustment" or that the entruster retain control over the operation of the vehicle. *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987); *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 44 (Tex. App.—Fort Worth 2002, no pet.).

However, "in instances where the owner leases the vehicle along with all rights of control and maintenance to the employer of the entrusted employee[,]" neither vicarious liability premised on the FMCSR statutory employment relationships nor direct negligent entrustment liability "pass[] . . . up the chain to the vehicle's true owner[.]" *McDorman ex rel. Connelly v. Texas-Cola Leasing Co. LP, LLP*, 288 F. Supp. 2d 796 (N.D. Tex. 2003). In this case, there is no evidence that Metro Trailer retained any possession or control over the trailer after leasing it to the motor carrier, Creekside, or that it was foreseeable that any driver Creekside engaged to operate it—Bryant, Oliver, or any other driver—would do so negligently. The Court therefore finds that Defendant Metro Trailer Leasing, Inc.'s Motion for Summary Judgment (docket no. 48) should be GRANTED.

## Intervenors' No-Evidence Motion for Summary Judgment (docket no. 49)

In their motion for summary judgment, intervenors assert that there is no evidence to support several affirmative defenses pleaded by Defendants, including new and independent cause and superseding cause, sudden emergency, act of god, unavoidable accident, contributory negligence and comparative negligence, and failure to mitigate damages. Docket no. 49 at 2-6. In their response, Defendants withdraw their affirmative defenses of sudden emergency, act of god, and failure to mitigate damages, docket no. 54 at ¶¶ 6, 16; argue that Intervenors' motion should be denied as insufficient because they have failed to meet their burden as movants of identifying materials in the record that demonstrate the absence of a genuine dispute of material fact, *id.* at ¶¶ 11-15; and further argue that evidence in the record does establish disputes of fact as to each element of their affirmative defense of new and independent cause and comparative and contributory negligence, *id.* at ¶¶ 16-22.

A new and independent cause—which is not an affirmative defense but an element to be considered in the determination of proximate cause—is "the act or omission of a separate and independent agent, not reasonably foreseeable, that destroys the causal connection, if any, between the act or omission inquired about and the occurrence in question." *Columbia Rio Grande Healthcare, LP v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). This is distinct from a concurring cause, which "concurs with the continuing and co-operating original negligence" in a manner that "leav[es] the causal connection between the defendant's negligence and the plaintiff's harm intact." *Stanfield v. Neubaum*, 494 S.W.3d 90, 98 (Tex. 2016). In drawing the distinction between a concurring and a new and independent cause, courts must consider a variety of factors, foremost among them whether the new and independent cause was a reasonably foreseeable result of the defendant's negligence. *Stanfield*, 494 S.W.3d at 98 & n.7. Foreseeability, in turn, is "a highly fact-specific inquiry that must be determined 'in the light of the attending circumstances,' not in the abstract." *Stanfield*, 494 S.W.3d at 98 (quoting *Texas & P. Ry. Co. v. Bigham*, 38 S.W. 162, 164 (1896)).

The Court agrees with Defendants that evidence indicating that White was traveling 92 miles per hour in a 65 mile per hour zone and indicating that he did not apply his brakes until 1.2 seconds before the collision occurred is sufficient to create a factual dispute both regarding whether White engaged in negligence that was a contributing cause to the collision, and whether that negligence was a reasonably foreseeable result of any negligent conduct engaged in by Defendants. The Court accordingly finds that Intervenors' No-Evidence Motion for Summary Judgment (docket no. 49) should be DENIED.

### Defendant Creekside Logistics, LLC's Motion for
### Partial Summary Judgment (docket no. 50)

In its motion for partial summary judgment, Defendant Creekside argues that it is entitled to summary judgment because Plaintiffs and Intervenors have no expert testimony regarding the standard of care for an interstate trucking company in relation to Plaintiffs' and Intervenors' direct negligence claims. Docket no. 50 at ¶¶ 8-27. Creekside also seeks summary judgment in its favor on Intervenors' claim for exemplary damages. Docket no. 50 at ¶¶ 28-30.

In their responses, Plaintiffs and Intervenors argue that summary judgment on their negligent hiring claims is not appropriate in light of evidence that, before Bryant was hired by Creekside, he had numerous moving violations and had his driver's license suspended, which Creekside did not ask him about. Docket nos. 55 at 5-6; 58 at 7-8. Plaintiffs and Intervenors also point to the supplemental report of their expert, David Dorrity, in which he opines that Creekside violated its own policies by hiring Bryant despite the number of moving violations in his driving record. Docket nos. 55 at 7; 58 at 8. As to their negligent training claim, Plaintiffs and Intervenors point to deposition testimony of Bryant and Creekside's General Manager, Mitchell Bishop, that Creekside did not administer a road test or defensive driving training to Bryant, and that there was no safety manager at Creekside during the relevant period, as well as Dorrick's opinion that Creekside's failure to provide driver safety trainings "deviated from the FM[CS]R and other industry standards[.]" Docket nos. 55 at 8-9; 58 at 8-9. In support of their negligent supervision and retention claims, Plaintiffs and Intervenors point to evidence that Bryant had violated the FMCSR hours of service regulations "on numerous occasions, including the day of the crash." Docket nos. 55 at 10-11; 58 at 11-12. Additionally, Intervenors argue that their negligent supervision and retention claims are supported by Dorrity's opinion that "Mr. Bryant deviated from FMCSR standards by having an unauthorized passenger"—Oliver—"in the cab of

his CMV." Docket no. 55 at 11. As to their negligent entrustment claims, Plaintiffs and Intervenors argue that summary judgment is not appropriate both because of evidence regarding the moving violations in Bryant's driving record, and in light of "evidence show[ing] that it might [have been] Oliver but not Bryant driving at the time of the wreck." Docket nos. 55 at 12-13; 58 at 12-14. Finally, Intervenors argue that summary judgment as to their claim for exemplary damages is not appropriate in light of Bryant's and Bishop's deposition testimony regarding Creekside's lack of safety training for drivers and Bryant's violations of the FMCSR hours of service regulations. Docket no. 55 at 13-15.

In its reply, Creekside argues that the supplemental opinions rendered by Plaintiffs' and Intervenors' expert, David Dorrity, should be stricken because they were not timely disclosed, and that Dorrity's putatively "supplemental" opinions exceed the permissible scope of supplementation for expert reports, docket no. 59 at ¶¶ 4-9, an argument that is also advanced in Defendants' separate motion to exclude or limit Dorrity's expert testimony, docket no. 61. Creekside also argues that Plaintiffs and Intervenors improperly conflate breaches of the standard of care with violations of internal Creekside policies, and that they misleadingly present testimony regarding the possibility that Oliver was operating the tractor trailer at the time of the collision as evidence that he was in fact doing so. Docket no. 59 at ¶¶ 10-15.

The necessity of expert testimony to establish negligence depends on "whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person." *FFE Transp. Services, Inc. v. Fulgham*, 154 S.W.3d 84, 91 (Tex. 2004). Plaintiffs' and Intervenors' direct liability and gross negligence claims go to the adequacy of Creekside's pre-hiring background investigation, driver safety training program, and Bryant's alleged violations of FMCSR requirements relating to hours of service and the presence of passengers in the cab of the tractor trailer—none of which "involve[] the use of specialized

equipment [or] techniques unfamiliar to the ordinary person." *Cf. FFE Transp.* Services, 154 S.W.3d at 91 (expert testimony required where jury determined "the standard of care for inspecting and maintaining refrigerated trailers").

Each of Plaintiffs' and Intervenors' direct negligence claims requires proof of causation—i.e., proof that an investigation into the hiree or entrustee would have revealed information that "'would cause a reasonable employer to not hire" the employee or would be sufficient to put the employer "on notice that hiring [the employee] would create a risk of harm to the public." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 240 (Tex. 2010). "The plaintiff must also prove that the risk that caused the entrustment or hiring to be negligent caused the accident at issue." *TXI Transp. Co.*, 306 S.W.3d at 240 (citing *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 597 (Tex. 1987)). Plaintiffs and Intervenors point to evidence that Creekside failed to investigate speeding tickets, hours of service violations, and other infractions Bryant had been issued before being hired by Creekside, and retained him after he engaged in further FMCSR hours of service violations and allowed an unauthorized passenger to ride with him. Docket no. 58 at 6-12. While the evidence in the record could support an inference that Bryant failed to yield the right of way and caused the collision because he was fatigued, distracted, or inadequately trained, Plaintiffs and Intervenors have produced no evidence that could establish a causal link between Bryant's speeding and other moving violations and the manner in which they contend Bryant's negligence caused the collision. Accordingly, the Court finds that Defendants are entitled to summary judgment on some—but not all—of Plaintiffs' and Intervenors' direct liability claims against Creekside. Specifically, Defendants are entitled to summary judgment on negligent hiring and entrustment claims that relate to Bryant's pre-hiring speeding citations and his citations for no tank vehicle endorsement, driver record of duty status not current, and tire tread separation; but not on the remaining direct liability claims asserted against Creekside.

In order to recover exemplary damages in this case, Intervenors must show by clear and convincing evidence that the harm they suffered resulted from gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003(a)(3). Under Texas law, gross negligence is "is the breach of duty involving an extreme degree of risk, considering the probability and magnitude of the potential harm to others (an objective element) when the actor has actual awareness of the risk involved but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others (a subjective element)." *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex. 1999); Tex. Civ. Prac. & Rem. Code § 41.001(11). Punitive damages are available in the context of negligent hiring or entrustment claims asserted against interstate carriers, *Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 572 (Tex. 1985), but to succeed, such claims must be supported by "'more than a finding that the driver was unlicensed or inexperienced'"—they require "'evidence that the driver was in fact incompetent or habitually reckless, and the owner knew or should have known that the driver was incompetent or reckless.'" *Phillips v. Super Services Holdings, LLC*, 189 F. Supp. 3d 640, 658 (S.D. Tex. 2016) (quoting *Williams*, 699 S.W.2d at 572).

Intervenors argue that a trialable issue exists as to gross negligence in light of Bishop's agreement in his deposition testimony that inadequately trained drivers, and those fatigued because they have driven in excess of the FMCSR hours of service regulations, would be "more likely to cause wrecks"; are "possibly not being safe on the roadways"; are "more likely [to] hurt or injure somebody"; and "create[e] a risk of injury or death to others in the roadways[.]" Docket no. 55 at 14-15. It is doubtful whether the evidence that Plaintiffs and Intervenors point to regarding Bryant's moving and hours of service violations could, as a matter of law, be sufficient to show that he is "incompetent or habitually reckless[,]" since it is not disputed that Bryant was a licensed and experienced driver. *Williams*, 699 S.W.2d at 573; *TXI Transp. Co. v. Hughes*, 224 S.W.3d 870, 920 (Tex. App.—Fort Worth 2007), *rev'd on other grounds*, 306 S.W.3d 230 (Tex.

2010). However, even assuming that Intervenors could establish the requisite degree of incompetence or habitual negligence, Bishop's acknowledgement of the speculative risks posed by untrained and fatigued drivers do not show that Creekside had knowledge of any incompetence or habitual recklessness on Bryant's part, and Intervenors have produced no evidence that could make such a showing. *Phillips v. Super Services Holdings, LLC*, 189 F. Supp. 3d 640, 658 (S.D. Tex. 2016) ("in order for a company to be liable for punitive damages, the courts require more evidence than that the employer failed to inquire into or check the driver's driving record. . . . The employer must be aware of the peril caused by its employee, but demonstrate by his acts or omissions that it does not care."); *Gaines v. Shelvin*, 9:08-CV-40, 2009 WL 10677820, at *2 (E.D. Tex. Apr. 9, 2009) (same). For these reasons, the Court finds that Defendant is entitled to summary judgment as to Intervenors' gross negligence claim,[1] and that Defendants' Combined Motion for Partial Summary Judgment (docket no. 50) should be GRANTED IN PART and DENIED IN PART as set forth below.

### Intervenors' Motions to Exclude or Limit the Testimony of Corporal Jon Shock (docket no. 45)

Intervenors argue that the expert testimony of Jon Shock, a Texas State Trooper who investigated the accident and has rendered opinions regarding the CDR data extracted from White's vehicle, should be excluded because Shock did not compare the CDR data to evidence from the scene of the collision, such as skid marks or yaw marks, or "perform any sort of analysis regarding human factors[,]" and that his opinions are therefore "speculative" and "unreliable." Docket no. 45 at 4. Intervenors do not dispute Shock's expertise, but argue that his

---

[1] The Court notes, that, to the extent that Creekside's vicarious liability for any negligent acts or omissions of Bryant is not disputed and no viable gross negligence claim remains pending, Plaintiffs' and Intervenors' direct and vicarious liability claims against Creekside may present "mutually exclusive modes of recovery." *See, e.g., Onofre v. C.R. England, Inc.*, SA-15-CV-425-DAE, 2016 WL 3406196, at *8 n.10 (W.D. Tex. June 17, 2016); *Williams v. McCollister*, 671 F. Supp. 2d 884, 887 (S.D. Tex. 2009).

analysis is inadmissible because he did not evaluate evidence that Intervenors presumably contend would show that, immediately before the collision, White was not traveling at the rate of speed attributed to him by Shock. However, Intervenors' objections to Shock's opinions go to their weight rather than to their admissibility, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Herrera*, 2015 WL 12670443, at *5 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)). The Court finds that Intervenors' Motion to Exclude or Limit the Testimony of Corporal Jon Shock (docket no. 45) should be DENIED.

### Intervenors Motion to Exclude or Limit the Testimony of Lane Van Ingen (docket no. 64)[2]

Intervenors argue that Van Ingen should be disqualified as an expert in this case both because he acknowledged in his deposition testimony that "he is in fact not legally qualified to operate a commercial vehicle similar to the one that was at issue in this suit" and as a sanction for his failure to "adequately comply with numerous parts of the subpoena duces tecum at the time of his deposition." Docket no. 64 at 5-6. Intervenors also argue that Conclusion 2 in Van Ingen's expert report—which went to Creekside's FMCSR compliance—is "inadequate" because it references a FMCSA compliance review that "predates the wreck in question by more than 5 months." Docket no. 64 at 5.

Van Ingen's CV reflects thirteen years of service as a Special Agent/Motor Carrier Safety Specialist with the U.S. Department of Transportation, followed by seventeen years as president

---

[2] Intervenors also filed a Motion to Strike or Exclude Van Ingen's proposed expert testimony approximately a month before his deposition in this case, but that motion presented no argument or authorities, and instead merely "reserve[d] [Intervenors'] right to amend their motion after Ingen's deposition testimony is taken based on agreement by the parties." Docket no. 46 at 1-2.

and owner of a transportation safety consulting firm. Docket no. 69-1 at 1. This experience is sufficient to qualify Van Ingen as an expert notwithstanding his lack of a CDL. Fed. R. Evid. 702 (witness may be "qualified as an expert by knowledge, skill, experience, training, or education"). Intervenors' argument regarding the lapse of five months between the FMCSA compliance review upon which Van Ingen relies and the collision goes to the weight of Van Ingen's opinions regarding Creekside's FMCSR compliance, not to their admissibility. *Herrera*, 2015 WL 12670443, at *5. Intervenors' arguments regarding Van Ingen's compliance with the subpoena duces tecum are supported by citations to the deposition transcript in which references are made to Van Ingen's nonproduction of the e-mail in which Van Ingen's staff transmitted his report to Creekside's counsel, docket no. 64-1 at 3; and the reports that he generated in all cases in which he had been retained as an expert in the preceding five years, docket no. 64-1 at 6—which were requested in items 4 and 10 of Intervenors' subpoena duces tecum. Docket no. 69-3 at 4-5. However, Intervenors have not responded to the privilege, overbreadth, and relevance objections that Defendants asserted to those requests, and have not accompanied their request for sanctions with a motion to compel that satisfies the requirements of Fed. R. Civ. P. 37(a)(1). For these reasons, the Court finds that Intervenors' Motion to Exclude or Limit the Testimony of Lane Van Ingen (docket no. 64) should be DENIED.

### Defendants' Motion to Exclude or Limit the Expert Testimony of David L. Dorrity (docket no. 61) and Intervenors' Motion for Leave to File Supplemental Expert Report of David Dorrity (docket no. 63)

Defendants argue that the expert testimony of Plaintiffs' and Intervenors' expert, motor carrier safety and compliance expert David L. Dorrity, should be excluded for two reasons: because his opinions are not based on a reliable methodology or a sufficient factual basis; and because of the untimely disclosure of his "Supplemental Safety Report." Docket no. 61 at 1-2.

The parties' arguments regarding the timeliness of Dorrity's supplemental opinions are also raised in the briefing on Intervenors' separate Motion for Leave to File Supplemental Expert Report of David Dorrity (docket no. 63).

In his initial "Safety Report," dated August 23, 2018, Dorrity rendered five opinions: that Bryant "failed to use the ordinary care for a CDL-CMV driver by failing to stop at the stop sign and to otherwise yield the right of way to plaintiff's vehicle"; that "Bryant failed to make a proper lookout down the roadway to make sure he could cross the highway before other traffic could reach his vehicle"; that "Bryant deviated from FMCSR standards by having an unauthorized passenger in the cab of his CMV"; that "Creekside . . . deviated from FMCSR and other industry standards by failing to provide safety training that could have prevented this crash"; and that "Bryant caused this crash and the crash was preventable had Mr. Bryant followed CDL-CMV safe driving practices." Docket no. 62-1 at 14-16. Dorrity's report also "reserv[ed] my opinions regarding Mr. Bryant's qualifications, cell-phone use, and hours of service compliance" and stated that "[t]hese opinions, if any, will be supplemented later pending my review of current documents, research and pending management depositions." Docket no. 62-1 at 16. Dorrity's "Supplemental Safety Report," dated November 20, 2018, includes a supplementation to his previous Opinion 3, stating—in light of deposition testimony indicating the possibility that Oliver rather than Bryant may have been operating the tractor trailer at the time of the collision—that "[i]t would be an extreme breach of the minimum industry standards for Mr. Oliver to drive if not properly licensed, previously qualified by Creekside under the FMCSRs, pre-employment drug tested and medically certified." Docket no. 62-3 at 5. The supplemental report also includes three separate supplemental opinions: that "Bryant should not have been hired by Creekside" because he failed to disclose safety violations on his driver application form and exceeded the number of safety violations allowed for Creekside

contractors; that "Bryant violated the hours of service regulations on numerous occasions including the day of the crash"; and that "[t]he FMCSA Safety Measurement System (SMS) public record for Creekside indicates that . . . Creekside's safety performance shows significant need for improvement as [its] vehicles and drivers over the last 24 months have been placed out of service (OOS) almost twice the national average[.]" Docket no. 62-2 at 6.

The basis of Defendants' methodological arguments is that Dorrity, though described by Plaintiffs and Intervenors as a "trucking/motor carrier safety and compliance expert[,]" does not apply—and is not qualified to apply—any accident reconstruction methodology in the course of rendering his opinions that Bryant caused the collision because he failed to stop, failed to yield, failed to maintain a proper lookout, and failed to "follow[] CDL-CMV safe driving practices." Docket nos. 61 at 5-6; 62-1 at 14-16. In response, Intervenors concede that Dorrity is not qualified as an accident reconstruction expert, but argue that he is nonetheless qualified to render causation opinions because doing so did not require him to undertake "his own calculations about the speed of the truck at the time of the collision" or perform other reconstructive work. Docket no. 62 at 7. Instead, Intervenors argue, Dorrity's causation opinions represent his synthesis of other fact evidence regarding the collision, such as electronic data from the vehicles involved and the testimony of officers regarding "their examination of the scene [and] the position of the vehicles." Docket no. 62 at 7-8. Rule 702 of the Federal Rules of Evidence notes that "the premise of receiving expert testimony is that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue[.]'" *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) (quoting Fed. R. Evid. 702). Thus, expert testimony is of little value, and should not be admitted, to the extent that it merely synthesizes fact evidence into

a narrative form.³ To the extent that interpreting the data extracted from vehicle computers calls for the application of some expertise and such interpretation would assist the trier of fact, Dorrity may be qualified to provide that interpretation.⁴ However, such interpretation does not extend to rendering opinions regarding the cause of the collision. Similarly, Dorrity offers an opinion that Bryant "failed to make a proper lookout down the roadway[,]" but does not connect that opinion to any applied methodology, and to the extent that Dorrity's opinion regarding the adequacy of Bryant's lookout is based on a synthesis of evidence regarding Bryant's activities immediately before the collision, or synthesis of the instructions found in the CDL manual he refers to, this factual synthesis does not represent the application of any expert methodology and would not assist the trier of fact.

And, to the extent that Dorrity's opinions go to purely legal matters, such as whether a given driving schedule violated the FMCSR hours of service regulations or whether the FMCSR require safety trainings in excess of those provided by Creekside or prohibits the presence of passengers in a tractor-trailer cab, they are not admissible. *Deaf Interpreter Services, Inc. v. Webbco Enterprises, LLC*, CV 5:13-867-RCL, 2015 WL 11565191, at *4 (W.D. Tex. Feb. 11, 2015) (citing *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)). The Court accordingly finds

---

³ *See, e.g., United States v. Johnson*, 54 F.3d 1150, 1157 (4th Cir. 1995) (Rule 703 "does not afford the expert unlimited license to testify or present a chart in a manner that simply summarizes the testimony of others without first relating that testimony to some 'specialized knowledge' on the expert's part"); *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003); *In re Prempro Prod. Liab. Litig.*, 554 F. Supp. 2d 871, 886 (E.D. Ark. 2008) ("If an expert does nothing more than read exhibits, is there really any point in her testifying as an expert?"), *aff'd in rel. part*, 586 F.3d 547, 571 (8th Cir. 2009); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) ("While an expert must of course rely on facts or data in formulating an expert opinion . . . an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.").

⁴ However, Dorrity's deposition testimony stressed that he did not render any opinions regarding the reliability of the electronic data, but instead "looked at a piece of paper, literally look at time values, literally looked at vehicle speed, and took all of it at face value." Docket no. 62 at 8.

that Defendants' motion to exclude Dorrity's opinions should be GRANTED IN PART as to opinions 2, 3, and 4 in Dorrity's August 23, 2018 Safety Report; as to opinion 1 except to the extent that Dorrity applies his expertise to interpreting the data extracted from vehicle computers; and as to opinion 5, except to the extent that Dorrity applies his expertise in describing CDL-CMV safe driving practices and related industry practices and standards.

In their motion seeking leave to supplement Dorrity's opinions, Intervenors argue that Dorrity was unable to render his supplemental opinions before the August 23, 2018, deadline for designation of testifying experts because it was not until the October 11 deposition of Creekside dispatcher Lynette Green that the possibility was raised that Oliver, rather than Bryant, had been operating the tractor-trailer at the time of the collision. Docket no. 63 at 2. Similarly, as to his supplemental opinions regarding FMCSR hours of service violations and Creekside's safety record, Intervenors argue that Dorrity was not able to render those supplemental opinions until reviewing the deposition testimony of other witnesses. Docket no. 63 at 2. Intervenors also note that Defendants' expert, Lane Scot Van Ingen, testified at the time of his own deposition on December 5, 2018, that he had reviewed both Dorrity's initial and supplemental reports, and testified that he was prepared to offer his own testimony regarding his opinions. Docket no. 63-1 at 4-5. In the analysis above, the Court noted that Dorrity is not qualified to offer opinions regarding accident causation, but may—to the extent that his expertise may be applied in a manner that would assist the jury's understanding—offer his interpretations of the data extracted from vehicle computers, which may be relevant to show the movement of the tractor trailer immediately before the collision as well as the hours it was driven in the days before the collision took place. In light of these limitations on Dorrity's initial and supplemental opinions, and because it appears that Defendants' expert testified in his own deposition regarding the substance of Dorrity's supplemental opinions after having had an opportunity to review his

supplemental report, docket no. 63-1 at 15-22, the Court finds that Intervenors' motion seeking leave to file Dorrity's supplemental report should be GRANTED.

**Conclusion and Order**

It is therefore ORDERED that:

- Intervenors' Motion to Extend Discovery Deadline (docket no. 47) is GRANTED. The deadline for this additional discovery—which is limited to the issue of the identity of the driver of the Creekside tractor trailer—is 30 days from the date of this Order;
- Defendant Metro Trailer Leasing Inc.'s Motion for Summary Judgment (docket no. 48) is GRANTED;
- Intervenors' No-Evidence Motion for Summary Judgment (docket no. 49) is DENIED;
- Defendant Creekside Logistics, LLC's Motion for Partial Summary Judgment (docket no. 50) is GRANTED IN PART as to Plaintiffs' and Intervenors' negligent hiring and entrustment claims that relate to Bryant's pre-hiring speeding citations and his citations for no tank vehicle endorsement, driver record of duty status not current, and tire tread separation, and on Intervenors' gross negligence claim; and DENIED IN PART as to the remaining direct liability claims asserted against Creekside;
- Intervenors' Motions to Exclude or Limit the Testimony of Corporal Jon Shock (docket no. 45) is DENIED;
- Intervenors motions seeking to Exclude or Limit the Testimony of Lane Van Ingen (docket nos. 46, 64) are DENIED;
- Defendants' Motion to Exclude or Limit the Expert Testimony of David L. Dorrity (docket no. 61) is GRANTED IN PART and DENIED IN PART as set forth above; and
- Intervenors' Motion for Leave to File Supplemental Expert Report of David Dorrity (docket no. 63) is GRANTED.

SIGNED this 1st day of February, 2019.

ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE